UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY ROYBAL, | ) | Case No. EDCV 12-02198-JEM |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND ORDER |
| v. | ) | AFFIRMING DECISION OF THE |
| | ) | COMMISSIONER OF SOCIAL SECURITY |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PROCEEDINGS**

On December 21, 2012, Gary Roybal ("Plaintiff" or "Claimant") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Social Security Disability Insurance benefits and Supplemental Security Income benefits.  The Commissioner filed an Answer on April 29, 2013.  On August 5, 2013, the parties filed a Joint Stipulation ("JS").  The matter is now ready for decision.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before this Magistrate Judge.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision must be affirmed and this case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 50 year-old male who applied for Social Security Disability Insurance benefits and Supplemental Security Income benefits on February 13, 2008.  (AR 8, 55, 56.)  The ALJ determined that Plaintiff has not engaged in substantial gainful activity since July 1, 2007, the alleged onset date of his disability.  (AR 10, 268.)

Plaintiff's claims were denied initially on May 14, 2008 (AR 8, 59-63) and on reconsideration on August 8, 2008.  (AR 8, 66-71.)  Plaintiff then sought review and on September 23, 2009, the matter proceeded to a hearing before Administrative Law Judge ("ALJ") Michael D. Radensky in San Bernardino, California.  (AR 8.)  Claimant appeared and testified at the hearing and was represented by counsel.  (AR 8.)  Medical expert ("ME") Dr. Arthur Lorber[1] and vocational expert ("VE") Troy L. Scott also appeared and testified at the hearing.  (AR 8.)

The ALJ issued an unfavorable decision on November 13, 2009.  (AR 8-19.)  The Appeals Council denied review on November 5, 2010.  (AR 1-3.)

Plaintiff commenced an action in this Court and on December 20, 2011 the District Court reversed and remanded the case.  (AR 349-362.)  Pursuant to the District Court remand order, the Appeals Council directed the ALJ to give Plaintiff the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.  (AR 265, 363-365.)

However, on February 11, 2010 (AR 265) a subsequent claim was filed for Supplemental Security Income benefits.  (AR 265.)  This claim was denied initially on July 19, 2010 and on reconsideration on November 17, 2010.  (AR 388.)  A hearing was held on January 12, 2012 in San Bernardino, California, before ALJ Margaret Craig.  (AR 388, 288.)  The ALJ issued an unfavorable decision on February 23, 2012.  (AR 388-398.)

The Appeals Council further directed that the two claims be associated, which the ALJ has done.  (AR 265.)  A hearing was held on September 14, 2013, in San Bernardino, California

---

[1]  Dr. Lorber appeared at the hearing via telephone.  (AR 8.)

before ALJ Michael D. Radensky.  (AR 265.)  Plaintiff appeared and testified at the hearing and was represented by counsel.  (AR 265.)  Vocational expert ("VE") Joseph H. Torres also appeared and testified at the hearing.  (AR 265.)  The ALJ issued an unfavorable decision on September 28, 2012 on the associated claims.  (AR 265-278.)

## DISPUTED ISSUES

As reflected in the Joint Stipulation, Plaintiff raises the following disputed issues as grounds for reversal and remand:

1. Whether the ALJ properly complied with the District Court Order in properly assessing Claimant's credibility.

2. Whether the ALJ properly complied with the District Court Order in properly determining if Plaintiff meets or equals listing 1.02/1.03.

3. Whether the ALJ properly considered the criteria of Listing 12.05C.

4. Whether the ALJ properly considered Plaintiff's treating physician's physical opinion.

5. Whether the ALJ properly considered Plaintiff's treating physician's mental opinions.

6. Whether the ALJ properly determined if activities of daily living establish the ability to perform full-time competitive substantial gainful activity.

7. Whether there is a DOT inconsistency in the ALJ's holding that the Plaintiff can perform the jobs such as mail clerk and packer.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v.

Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

## THE SEQUENTIAL EVALUATION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has established a five-step sequential process to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746.  An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Pt. 404, Subpt. P, Appendix I of the regulations. Parra, 481 F.3d at 746.  If the impairment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ must determine

1    whether the impairment prevents the claimant from doing past relevant work.  Pinto v.

2    Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).

3         Before making the step four determination, the ALJ first must determine the claimant's

4    residual functional capacity ("RFC").  20 C.F.R. § 416.920(e).  Residual functional capacity

5    ("RFC") is "the most [one] can still do despite [his or her] limitations" and represents an

6    assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

7    The RFC must consider all of the claimant's impairments, including those that are not severe.

8    20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p.

9         If the claimant cannot perform his or her past relevant work or has no past relevant work,

10   the ALJ proceeds to the fifth step and must determine whether the impairment prevents the

11   claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864,

12   869 (9th Cir. 2000).  The claimant bears the burden of proving steps one through four,

13   consistent with the general rule that at all times the burden is on the claimant to establish his or

14   her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established

15   by the claimant, the burden shifts to the Commissioner to show that the claimant may perform

16   other gainful activity.  Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support

17   a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

18   demonstrating that other work exists in significant numbers in the national economy that the

19   claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R.

20   § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and

21   entitled to benefits.  Id.

22                              **THE ALJ DECISION**

23        In this case, the ALJ determined at step one of the sequential process that Plaintiff has

24   not engaged in substantial gainful activity since July 1, 2007, the alleged onset date.  (AR 10,

25   268.)

26        At step two, the ALJ determined that Plaintiff has the following combination of medically

27   determinable severe impairments: bilateral knee osteoarthritis, degenerative disc disease of the

28   lumbar spine, obesity, bipolar disorder, and alcohol dependence.  (AR 268.)

At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  (AR 268.)

The ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform less than the full range of light work with the following limitations:

> Claimant can lift, carry, push or pull 20 pounds occasionally and 10 pounds frequently; he can sit eight hours out of an eight-hour workday, one hour at a time; he can stand or walk four hours out of an eight-hour workday; he can occasionally bend, stoop, and climb ramps and stairs; he can only occasionally operate foot pedals, bilaterally.  Claimant is precluded from working at unprotected heights and around dangerous moving machinery; he is precluded from balancing, kneeling, crawling, and climbing ladders, ropes or scaffolds; he must avoid exposure to concentrated vibration and rough or uneven surfaces; and he is restricted to routine, repetitive tasks not involving contact with the public .

(AR 269-276.)  In determining the RFC, the ALJ made an adverse credibility determination. (AR 270.)

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 276.)  The ALJ, however, also found that, considering Claimant's age, education, work experience and RFC, there are a significant number of jobs in the national economy that Plaintiff can perform, including mail clerk and packer.  (AR 277-278.)

Consequently, the ALJ determined that Claimant is not disabled within the meaning of the Social Security Act at any time from July 1, 2007, through the date of the ALJ's decision. (AR 278.)

**DISCUSSION**

The District Court previously reversed the ALJ's credibility determination and remanded with instructions to develop the record further, especially in regard to certain listings.  The ALJ complied with the District Court order, and the extensive additions to the record and further

analyses are highlighted in the new opinion.  The ALJ properly discounted Plaintiff's credibility, properly determined that Plaintiff does not meet any listings, and properly discounted the opinions of Plaintiff's treating physicians.  The ALJ also properly formulated Plaintiff's RFC and properly found that there were jobs in the national economy that Plaintiff can perform.

The ALJ's RFC is supported by substantial evidence.  The ALJ's non-disability determination is supported by substantial evidence and free of legal error.

## I.   THE ALJ PROPERLY DISCOUNTED PLAINTIFF'S CREDIBILITY

The prior District Court decision reversed the ALJ's credibility determination and directed the ALJ on remand to reconsider Plaintiff's testimony.  Plaintiff contends that the new ALJ decision does not comply with the District Court's Order by discounting Plaintiff's subjective symptom testimony improperly.  The Court disagrees.

### A.   Relevant Federal law

The test for deciding whether to accept a claimant's subjective symptom testimony turns on whether the claimant produces medical evidence of an impairment that reasonably could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Smolen, 80 F.3d at 1281-82 & n.2.  The Commissioner may not discredit a claimant's testimony on the severity of symptoms merely because it is unsupported by objective medical evidence. Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ finds the claimant's symptom testimony not credible, the ALJ "must specifically make findings which support this conclusion."  Bunnell, 947 F.2d at 345.  These findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); see also Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46.  Unless there is evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by offering "specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1283-84; see also Reddick, 157 F.3d at 722.  The ALJ must identify what testimony is

1  not credible and what evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80
2  F.3d at 1284.

3  **B.    Analysis**

4       In determining Plaintiff's RFC, the ALJ found that Claimant has not established medically
5  determinable impairments that reasonably could be expected to cause the alleged symptoms.
6  (AR 270.)  The ALJ, however, also found that the Claimant's statements concerning the
7  intensity, persistence and limiting effects of these symptoms are not credible to the extent those
8  statements are inconsistent with the ALJ's RFC.  (AR 270.)  Because the ALJ did not make a
9  finding of malingering, he was required to provide clear and convincing reasons supported by
10  substantial evidence to discount Plaintiff's credibility.  Smolen, 80 F.3d at 1283-84.  The ALJ did
11  so.

12       First, the ALJ found that the objective medical evidence did not substantiate Claimant's
13  subjective symptom allegations or support more restrictive limitations than those in the ALJ's
14  RFC.  (AR 271-276.)  An ALJ is entitled to consider whether there is a lack of medical evidence
15  to corroborate a claimant's alleged pain symptoms so long as it is not the only reason for
16  discounting a claimant's credibility.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005);
17  Thomas, 278 F.3d at 959.  The ALJ extensively reviewed the medical evidence regarding
18  Plaintiff's knees and back.  Despite Plaintiff's complaints of continuing pain, X-rays of his knees
19  in 2007 and 2008 showed no fracture, dislocation, effusions or evidence of arthritis or loose
20  bodies.  (AR 271-272.)  After a 2009 X-ray showed moderate arthritis in both knees, Claimant
21  underwent arthroscopic procedures that he tolerated well without complications.  (AR 272.)  A
22  2010 X-ray revealed no significant arthritis.  (AR 272.)  As for his back, Claimant was diagnosed
23  with degenerative disc disease of the lumbar spine with radiculopathy.  (AR 272.)  Following
24  spinal surgery, however, X-ray scans revealed stable fusion.  (AR 272.)  On June 3, 2012, an
25  orthopedic consulting examiner, Dr. Vincente Bernabe, evaluated Plaintiff.  His findings were
26  unremarkable except for grinding and medial joint space grinding in Plaintiff's knees.  (AR 273.)
27  Dr. Bernabe found Claimant had a normal gait, was in no acute distress, ambulated without
28  assistive devices, had no cervical spine tenderness and negative straight leg raising.  (AR 273.)

1   He assessed Plaintiff as capable of medium work.  (AR 273.)  Three State agency consultants

2   also assessed Plaintiff as capable of medium or light work.  (AR 274)

3          As to mental limitations, in 2009 Claimant was found to have normal behavior,

4   perceptual processes, thought processes, thought content, memory and orientation.  (AR 273,

5   246.)  Plaintiff was examined by Dr. Margaret Donohue on June 9, 2012.  She diagnosed

6   depression and assessed only moderate to slight impairments in mental functioning.  (AR 273-

7   274.)  Dr. Donohue found the Claimant is able to perform a range of unskilled work with limited

8   public contact.  (AR 275.)  The ALJ essentially adopted Dr. Donohue's assessment by

9   specifying a restriction to "routine repetitive tasks not involving contact with the public."  (AR

10  269, 275.)

11         Plaintiff challenges the ALJ's assessment of the medical evidence with the more

12  restrictive physical and mental assessments of Plaintiff's treating physicians.  The ALJ,

13  however, rejected these opinions for specific, legitimate reasons supported by substantial

14  evidence, as discussed below.  Thus, the ALJ's finding that Plaintiff's subjective symptom

15  testimony is inconsistent with the objective medical evidence is supported by substantial

16  evidence.  The ALJ, however, did not rely on this reason alone in discounting Plaintiff's

17  credibility.

18         Second, the ALJ noted important inconsistencies in Plaintiff's statements and between

19  Plaintiff's statements and conduct.  Thomas, 278 F.3d at 958-59 (ALJ may consider when

20  weighing a claimant's credibility inconsistencies either in claimant's testimony or between the

21  claimant's testimony and conduct).  The ALJ noted that, despite Plaintiff's statements that he

22  could not walk and needed an assistive device to walk (AR 141, 271), he admitted he did not

23  require a walker or wheelchair and only occasionally needed a cane.  (AR 271.)  The orthopedic

24  examiner reported Claimant walked with a normal gait and ambulated without assistive devices,

25  and Claimant appeared at the hearing without assistive devices and had no significant

26  abnormalities of gait.  (AR 271.)  Despite claims of back and knee pain, Plaintiff reported to his

27  doctor that he was doing well, had some residual back pain and no pain in his legs.  (AR 272.)

28

1    Third, the ALJ found that Plaintiff's daily activities were inconsistent with his allegations

2    of disabling pain.  (AR 270.)  Claimant's daily activities are a factor in determining his credibility.

3    Bunnell, 947 F.2d at 345-46.  Here, the consulting examiner reported Claimant is able to shop,

4    travel, use public transportation, prepare meals, perform personal care tasks and handle files.

5    (AR 270.)  Claimant testified that he used public transportation, socialized with friends, went out

6    to buy sandwiches, walked around, and went to the market.  (AR 270.)  The ALJ properly

7    concluded that Plaintiff's ability to participate in such activities suggested he had the physical

8    and mental capacity, as well as social interaction skills, to maintain employment.  (AR 270.)

9    Additionally, Plaintiff's ability to participate in the above activities belies Plaintiff's claim that he

10   could not walk or do basic work activities.  (AR 270.)  Plaintiff argues that these activities do not

11   translate into the ability to perform full-time work.  The ALJ, however, saw it differently and in

12   any event the above activities, even if they do not prove Plaintiff can return to work, at the least

13   suggest that the alleged severity of his limitations is exaggerated.  Valentine v. Astrue, 574 F.3d

14   685, 694 (9th Cir. 2009).

15       Plaintiff disputes the ALJ's interpretation of the evidence regarding Plaintiff's credibility

16   and points to other evidence in the records, but the ALJ is the one responsible for resolving

17   disputes in the medical evidence and ambiguities in the record.  Andrews v. Shalala, 53 F.3d

18   1035, 1039 (9th Cir. 1995).  Where the ALJ's interpretation of the record is reasonable as it is

19   here, it should not be second-guessed.  Rollins, 261 F.3d at 857.

20       The ALJ discounted Plaintiff's credibility for clear and convincing reasons supported by

21   substantial evidence.  The ALJ complied with the District Court remand order.

22   **II.    THE ALJ'S DETERMINATION THAT PLAINTIFF DOES NOT MEET
         A LISTING IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

23       Plaintiff contends that his impairments meet the criteria of Listings 1.02/1.03 and/or

24   12.05C, and thus he should have been found disabled at step three of the sequential process.

25   The Court disagrees.

26

27

28

1

**A.     Relevant Federal Law**

2      Social Security regulations provide that a claimant is disabled if he or she meets or

3  medically equals a listed impairment.  Section 416.920(a)(4)(iii) ("If you have an impairment that

4  meets or equals one of our listings . . . we will find that you are disabled"); Section 416.920(d)

5  ("If you have an impairment(s) which . . . is listed in Appendix 1 or is equal to a listed

6  impairment(s), we will find you disabled without considering your age, education, and work

7  experience").  In other words, if a claimant meets or equals a listing, he or she will be found

8  disabled at this step "without further inquiry."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1099 (9th Cir.

9  1999).  There is no need for the ALJ to complete steps four and five of the sequential process.

10 <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).

11     The listings in Appendix 1 describe specific impairments considered "severe enough to

12 prevent an individual from doing gainful activity, regardless of his or her age, education, or work

13 experience."  Section 404.1525.  An impairment that meets a listing must satisfy all the medical

14 criteria required for that listing.  Section 404.1525(c)(3); <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530

15 (1990).  An impairment cannot meet a listing based only on a diagnosis.  Section 404.1525(d);

16 <u>Key v. Heckler</u>, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

17     Medical equivalence will be found if the impairment "is at least equal in severity and

18 duration to the criteria of any listed impairment."  (Section 404.1526(a)).  Medical equivalence is

19 based on symptoms, signs and laboratory findings, but not subjective symptoms.  Section

20 404.1529(d)(3).

21

**B.     Analysis**

22     The prior District Court opinion specifically directed the ALJ on remand to address

23 Listings 1.02 and 1.03, at 20 C.F.R. Pt. 404, Subpt. P, App. I of the Regulations.  The ALJ did

24 so, separately and in combination, including Listings 1.02 and 1.03, and found that Claimant's

25 impairments do not meet or equal any listing.  Plaintiff contends that the ALJ did not properly

26 consider whether Plaintiff meets listings for musculoskeletal impairments or for mental

27 retardation under Listing 12.05C.  The Court disagrees.

28

1.      Listings 1.02 and 1.03

The ALJ found that Claimant had the severe musculoskeletal impairments of bilateral knee osteoarthritis and degenerative disc disease of the lumbar spine. (AR 268.) The ALJ determined that these impairments do not meet or equal Listings 1.02 and 1.03.

Listing 1.02 describes a major dysfunction of a joint with involvement of one major peripheral weight-bearing joint, resulting in the "inability to ambulate effectively, as defined in 1.00B2b." Similarly, Listing 1.03 describes reconstructive surgery, with the "inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset."

Section 1.00B2b defines the inability to ambulate effectively. Section 1.00B2a provides that inability to ambulate effectively or the inability to perform fine and gross movements effectively "must have lasted, or be expected to last, for at least 12 months." Section 1.002b1 defines inability to ambulate effectively as "an extreme limitation of the ability to walk." Ineffective ambulation generally means 'insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

Section 1.002b2, on which Plaintiff relies for his argument that he meets Listings 1.02 and 1.03, provides as follows:

(2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk

1        independently about one's home without the use of assistive devises does not,

2        in and of itself, constitute effective ambulation.

3  The ALJ made extensive findings that Plaintiff failed to prove that he was unable to

4  ambulate effectively:

5        **. . .** To be sure, the undersigned finds that the claimant failed to establish that

6        he was unable to ambulate effectively.  Indeed, the consultative examiner found

7        the claimant had a normal gait, was in no acute distress, had normal

8        neurological functions, ambulated with no assistive devices, had no cervical

9        spine tenderness, and tested negative for the straight leg raise test.  (Ex. 15F,

10        at 2-4.)  No treating or examining physician has recorded findings equivalent

11        in severity to the criteria of any listed impairment, nor does the evidence show

12        medical findings that are the same or equivalent to those of any listed

13        impairment.

14  (AR 268 (bold omitted).)  Elsewhere in the decision, the ALJ discounted Plaintiff's credibility

15  because the objective medical evidence established that Claimant could ambulate without

16  assistive devices with no significant abnormalities of gait.  (AR 271.)  He also noted

17  inconsistencies in Plaintiff's statements about his ability to walk without assistive devices, and

18  also in his conduct and daily activities which indicated an ability to walk without assistive

19  devices.  (AR 270-271.)

20      Plaintiff rests his contention that he meets Listings 1.02 and/or 1.03 on the ALJ's RFC

21  limitation to avoid "walking on rough or uneven surfaces."  (AR 269.)  One of the examples of

22  inability to ambulate effectively in 1.002b2 is "the inability to walk a block at a reasonable pace

23  on rough or uneven surfaces."  On this basis without reference to any medical opinion or

24  medical findings, Plaintiff contends that he satisfies 1.02 and 1.03.

25      The Court disagrees.  The ALJ made extensive findings that Plaintiff was able to

26  ambulate effectively, notwithstanding the precautionary limitation regarding rough or uneven

27  surfaces.  The ALJ cites the consulting orthopedic examiner's finding that "claimant had a

28  normal gait, was in no acute distress, had normal neurological functions, ambulated with no

1   assistive devices, had no cervical spine tenderness, and tested negative for the straight leg

2   raise test." (AR 268.)  The ALJ also noted that no treating or examining physician recorded

3   findings of such severity as to meet or equal a listing.  (AR 268.)

4          The ALJ obviously believed Plaintiff could ambulate effectively and made extensive

5   findings to that effect that are supported by substantial evidence.  Plaintiff points to no medical

6   evidence to establish his inability to ambulate effectively.  The ALJ's determination that

7   Claimant does not meet or equal Listing 1.02 or 1.03 is supported by substantial evidence.

8              2.    Listing 12.05C

9          Claimant contends that he meets the requirements for mental retardation under Listing

10  12.05C and that the ALJ failed to consider this listing.  The Court disagrees.

11         Listing 12.05 provides as follows:

12             12.05.  Mental Retardation: Mental retardation refers to significantly

13             subaverage general intellectual functioning with deficits in adaptive

14             functioning initially manifested during the development period; *i.e.*, the

15             evidence demonstrates or supports onset of the impairment before age 22.

16                 The required level of severity for this disorder is met when the

17             requirements in A, B, C or D are satisfied.

18                             * * *

19             C.  A valid verbal, performance, or full scale IQ of 60 through 70 and

20             a physical or other mental impairment imposing an additional and significant

21             work-related limitation or function.

22  (Emphasis added.)

23         Plaintiff contends that the consulting psychologist Dr. Donohue found that the Claimant

24  had a full scale IQ of 62 (AR 273), within the range specified in 12.05C.  He also contends that

25  he suffers from other physical and mental impairments that impose significant work-related

26  limitations, which satisfied the other requirement of 12.05C.  Thus, Plaintiff contends that he

27  should be found disabled under 12.05C.

28

1   The ALJ stated that he considered all of Claimant's impairments, singly and in

2   combination, "under all the medical listings" and his impairments did not meet any listings.  (AR

3   268.)  Plaintiff complains that the ALJ did not provide a specific discussion of 12.05C but

4   Plaintiff has the burden of proving he meets a listing, <u>Burch</u>, 400 F.3d at 683, and the ALJ is not

5   required to discuss every listing and why Claimant does not meet every listing.  <u>Gonzalez v.</u>

6   <u>Sullivan</u>, 914 F.3d 1197, 1201 (9th Cir. 1990).

7   The Commissioner concedes that Plaintiff meets 12.05C but fails to meet 12.05

8   preliminary criteria.  Thus, the analysis never reaches 12.05C.  Specifically, there is no

9   evidence of mental retardation that manifested itself "before age 22."  Indeed, Plaintiff stated

10  that he finished the 11th grade in high school, mostly in regular classes.  (AR 293.)

11  There also was no evidence of "deficits in adaptive functioning."  Dr. Donohue found only

12  slight to moderate limitations in functioning and only mild impairment in intelligence, and opined

13  in effect that Claimant was not precluded from work.  (AR 273, 275, 455-56.)  Treatment

14  records indicated normal behavior, perceptual processes, thought processes, thought content,

15  memory and orientation.  (AR 273, 246.)

16  Under these circumstances where Claimant did not meet foundational criteria for mental

17  retardation under 12.05C, the ALJ did not err by failing to provide a specific discussion of

18  12.05C.  The ALJ's determination that Plaintiff did not meet or equal any listings is supported by

19  substantial evidence.

20  **III.     THE ALJ PROPERLY DISCOUNTED THE OPINIONS
           OF PLAINTIFF'S TREATING PHYSICIANS**

21

22  Plaintiff contends that the ALJ improperly discounted the opinions of his treating

    physicians.  The Court disagrees.

23

    **A.     Relevant Federal Law**

24

25  In evaluating medical opinions, the case law and regulations distinguish among the

    opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2)

26

    those who examine but do not treat the claimant (examining physicians); and (3) those who

27

28  neither examine nor treat the claimant (non-examining, or consulting, physicians).  <u>See</u> 20

C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).  If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record.  Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas, 278 F.3d at 957.  Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings.  See Andrews, 53 F.3d at 1041; Orn, 495 F.3d at 632.  Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it.  Id.  However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record.  Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

/ / /

/ / /

/ / /

1    **B.    Analysis**

2         1.    <u>Treating Physician (Physical)</u>

3         A physician whose name is illegible filled out a check box form entitled Medical Opinion

4    re: Ability To Do Work-Related Activities (Physical) dated January 15, 2009.  (AR 236-238, 274-

5    275.)  Based on Plaintiff's "Lower disk deterioration and knee surgery" (AR 237), this

6    physician assessed marked limitations.  He opined that Plaintiff could carry but 10 pounds

7    occasionally and less than 10 pounds frequently and could stand/walk for less than 2 hours in

8    an 8-hour workday.  (AR 236.)   He further opined that Claimant could sit for less than 2 hours

9    and needed to lie down 3 times a day.  (AR 236, 237.)   He stated Plaintiff would be absent

10   from work for 3 days a month.  (AR 238.)  The physician essentially found that the Claimant

11   was unable to work at the level of substantial gainful activity because of back and knee pain.

12   (AR 274.)

13        The ALJ gave little weight to the above opinion because it is "brief, conclusory and

14   inadequately supported by clinical findings."  (AR 274.)  This is a legitimate basis to reject a

15   treating physician medical opinion.  <u>Thomas</u>, 278 F.3d at 957; <u>see</u> <u>also</u> <u>Batson v. Comm'r</u>, 359

16   F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are

17   conclusory, brief, and unsupported by the record as a whole or by objective medical findings)

18   and 1195 n.3 (little in way of clinical findings); <u>Crane v. Shalala</u>, 76 F.3d 251, 253 (9th Cir.

19   1996) (ALJ properly rejected check box opinions that did not have any explanation or basis).

20   The medical opinion is in fact a largely check box, conclusory opinion without much explanation

21   or any clinical findings or treatment notes to support it.  There is no indication who the physician

22   is, what his specialty is or how long he has treated Claimant.  There is no indication what

23   records were reviewed.

24        The ALJ also found that this opinion is contradicted by other evidence in the record.  The

25   ALJ noted that the opinion is contrary to the objective medical evidence, including X-ray scans

26   and a neurologic examination.  (AR 274-275.)  The ALJ further noted that the opinion is

27   inconsistent with Dr. Bernabe's finding that Claimant had a normal gait, was in no acute

28

1    distress, ambulated with no assistive devices, had no cervical spine tenderness and tested

2    negative for the straight leg test.  (AR 275.)

3        The ALJ had no duty to recontact the physician here to obtain a clarification of his or her

4    opinions.  An ALJ is required to recontact a doctor only if the doctor's opinion is ambiguous or

5    insufficient for the ALJ to make a determination of disability.  Bayliss, 427 F.3d at 1217 (citing

6    20 C.F.R. § 404.1562(e)).  Where other evidence in the record is adequate to determine

7    disability, there is no duty to recontact other doctors.  Id.  The ALJ here thoroughly reviewed the

8    evidence and had an adequate basis for the RFC assessed.

9        Plaintiff attacks the ALJ's statement that the physician's disability opinion is not entitled

10   to controlling weight or special significance.  (AR 274.)  Although Plaintiff correctly notes that an

11   ALJ may not ignore a medical opinion because it addresses the ultimate issue of disability, see

12   Sexton v. Astrue, 2010 WL 1854055*2 (C.D. Cal.), the ALJ here did not do so.  The ALJ

13   explicitly rejected the opinion because it is conclusory and contradicted by other evidence in the

14   record.

15       The conclusory opinion relied on by Claimant is slim evidence to overcome the extensive

16   medical evidence to the contrary set forth by the ALJ.  (AR 274.)  As already noted, the ALJ is

17   the one responsible for resolving conflicts in the medical evidence.  Andrews, 53 F.3d at 1035.

18   Where the ALJ's interpretation of the evidence is reasonable, as it is here, it should not be

19   second-guessed.  Rollins, 261 F.3d at 857.

20       The ALJ rejected the opinion relied on by Claimant for specific, legitimate reasons

21   supported by substantial evidence.

22           2.    Dr. Eklund (Mental)

23       Plaintiff's treating psychiatrist, Dr. Steve Eklund, submitted a two page check box Work

24   Capacity Evaluation (Mental) dated July 20, 2009.  (AR 255-256.)  Dr. Eklund marked boxes

25   indicating marked to moderate mental limitations and showing that Claimant would miss 3 or

26   more days of work a month.  (AR 255-256.)  Dr. Eklund also provided a Medical Opinion Re:

27   Ability To Do Work-Related Activities (Mental) dated November 9, 2011.  (AR 487-488.)

28

1   Dr. Eklund marked numerous boxes indicating that Plaintiff would be unable to meet

2   competitive standards for many work-related activities.  (AR 487-488.)  He stated that Plaintiff

3   has a history of outbursts and yelling at people, and would miss work more than 4 days a

4   month.  (AR 488.)

5          The ALJ gave little weight to Dr. Eklund's opinion because it is "brief, conclusory and

6   inadequately supported by clinical findings."  (AR 275.)  The ALJ noted that Dr. Eklund did not

7   provide an explanation for his assessments or sufficient medical findings to support the

8   assessments.  (AR 275.)

9          The ALJ also observed that Dr. Eklund's opinion is "inconsistent with the benign mental

10  status examination in the records that shows that the Claimant had normal behavior, perceptual

11  processes, thought processes, thought content, memory, and orientation."  (AR 275, 246.)

12  Supporting the ALJ's rejection of Dr. Eklund's opinion is the report of Dr. Margaret Donohue

13  discussed above finding only moderate to slight mental impairments that do not preclude work.

14  (AR 273-274, 275, 451-459.)  Further supporting the ALJ's rejection of Dr. Eklund's opinion is

15  the discounting of Plaintiff's credibility.  (AR 271-276.)

16         Thus, the ALJ had no duty to recontact Dr. Eklund because there was other evidence in

17  the record adequate to determine disability.  Bayliss, 427 F.3d at 1217.  Nor did the ALJ ignore

18  Dr. Eklund's opinion because it addresses the ultimate issue of disability.  See Sexton, 2010

19  WL 1854055*2.  The ALJ rejected the opinion because it was conclusory, unsupported by

20  clinical findings and contradicted by other evidence.

21         Plaintiff disputes the ALJ's interpretation of the evidence but the ALJ is responsible for

22  resolving conflicts in the medical evidence and ambiguities in the record.   Andrews, 53 F.3d at

23  1035.  Where the ALJ's interpretation is reasonable as it is here, it should not be second-

24  guessed.  Rollins, 261 F.3d at 857.

25         The ALJ rejected the opinion of Dr. Eklund for specific, legitimate reasons supported by

26  substantial evidence.

27

28

**IV.    THERE WAS NO HARMFUL ERROR IN THE ALJ'S STEP FIVE DETERMINATION**

Plaintiff contends the ALJ's step five finding that Plaintiff can perform the jobs of mail clerk and packer is inconsistent with the DOT.  The Court agrees as to the mail clerk job but the ALJ's error was harmless because the packer job is not inconsistent with the DOT.

**A.    Relevant Federal Law**

The Commissioner bears the burden at step five of the sequential process to prove that Plaintiff can perform other work in the national economy, given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000).  There are two ways to meet this burden: (1) the testimony of a VE, or (2) reference to the Medical-Vocational Guidelines ("Grids").  Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant suffers only exertional limitations, the ALJ must consult the Grids.  Lounsburry, 468 F.3d at 1115.  A nonexertional impairment, however, may limit the claimant's functional capacity in ways not contemplated by the Grids. Tackett, 180 F.3d at 1002.  Thus, when a claimant suffers from both exertional and nonexertional limitations, the ALJ must first determine whether the Grids mandate a finding of "disabled."  Id. at 1116; Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  If so, the claimant will be awarded benefits.  Cooper, 880 F.2d at 1155.  If not, the ALJ must use the Grids as a framework for decision-making in determining how much the nonexertional limitations limit the range of work permitted by the exertional limitations.  Tackett, 180 F.3d at 1102.  In such instances, the ALJ must obtain the testimony of a vocational expert to determine if there are jobs in the national economy that the claimant can perform.  Tackett, 180 F.3d at 1102; Osenbrock, 240 F.3d at 1162.

Typically, the best source of how a job is generally performed in the national economy is the Dictionary of Occupational Titles or "DOT."  Pinto, 249 F.3d at 845.  DOT raises a presumption as to job classification requirements.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may accept vocational expert testimony that varies from DOT, but the record must contain "persuasive evidence to support the deviation."  Id.  The ALJ has an

affirmative responsibility to ask whether a conflict exists between a VE's testimony and DOT. SSR 00-4p, 2000 WL 1898704, at *4 (S.S.A. Dec. 4, 2000); Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007).  If there is a conflict, the ALJ must obtain a reasonable explanation for the conflict and then must decide whether to rely on the VE or DOT.  Id.  Failure to do so, however, can be harmless error where there is no actual conflict or the VE provides sufficient support to justify any conflicts with or variation from the DOT.  Massachi, 486 F.3d at 1154 n.19.

An ALJ may rely on a VE's response to a hypothetical question containing all of a claimant's limitations found credible by the ALJ and supported by substantial evidence.  Bayliss, 427 F.3d at 1217-18.  The VE's testimony is substantial evidence.  A VE's recognized expertise provides the necessary foundation for his or her testimony.  Bayliss, 427 F.3d at 1218.  No additional foundation is required.  Id.

### B.    Analysis

The ALJ's RFC provides for less than the full range of light work.  (AR 269.)  It includes, among others, these two limitations: (1) standing or walking but four hours out of an eight hour work day for one hour at a time, and (2) a restriction to routine, repetitive tasks not involving contact with the public.  (AR 269.)  The ALJ obtained the testimony of a vocational expert who testified that Plaintiff could perform jobs in the national economy, including mail clerk (DOT 209.687-026) and packer (DOT 920.687-166).  The VE testified and the ALJ determined that the VE's opinion was consistent with the DOT.

The VE's testimony and the ALJ's finding as to the mail clerk job is in error.  The DOT job description for the mail clerk job (DOT 209.687-026) specifies a Reasoning Level of 3.  A simple, repetitive task limitation like that specified in the ALJ's RFC has been held consistent only with Reasoning Level 1 (one and two step instructions) and Reasoning Level 2 (three and four step instructions), see Chavez v. Astrue, 2009 WL 5172857*7 n.10 (C.D. Cal.) (Reasoning Levels 1 and 2 consistent with simple, repetitive tasks), but not Reasoning Level 3.  Hamlett v. Astrue, 2012 WL 469722*4 (C.D. Cal.) (Reasoning Level 3 jobs inconsistent with simple, repetitive non-public tasks); Grimes v. Astrue, 2011 WL 164537*4 (C.D. Cal.) (same); Carney v.

Astrue, 2010 WL 5060488*4 (C.D. Cal.) (same); Smith v. Astrue, 2011 2749561*5 (C.D.  Cal.)
(same); Bagshaw v. Astrue, 2010 WL 256544*5 (C.D. Cal.) (same); McGensy v. Astrue, 2010
WL 1875810*3 (C.D. Cal.) (same); Tich Pham v. Astrue, 695 F. Supp. 2d 1027, 1032 n.7 (C.D.
Cal.) (same); Elter v. Astrue, 2010 WL 43144155*3 (C.D. Cal.) (same); Pak v. Astrue, 2009 WL
2151361*7 (C.D. Cal.) (same); Tudino v. Barnhart, 2008 WL 4161443*11 (S.D. Cal.) ("Level 2
reasoning appears to be the breaking point for those individuals limited to performing only
simple, repetitive tasks"); Squier v. Astrue, 2008 WL 2537129*5 (C.D. Cal.) (Reasoning Level 3
inconsistent with simple, repetitive work).  Thus, the ALJ erred in finding that Plaintiff can
perform the mail clerk job.

The ALJ's error, however, was harmless because the DOT requirements for the packer
job are not inconsistent with the ALJ's RFC.  See Carmickle v. Comm'r Soc. Sec. Adm., 533
F.3d 1155, 1162-63 (9th Cir. 2008).  The packer job only requires a Reasoning Level of 2 (DOT
920.687-166), which is consistent with simple, repetitive non-public work.  Plaintiff,
nevertheless, contends that the ALJ's limitation that Plaintiff can stand or work only four hours a
day is inconsistent with the DOT.  The Court disagrees.

Plaintiff asserts that the packer job would require a person to stand or walk 6 hours a day
but the DOT job description for the packer job does not contain that requirement.  DOT
920.687-166 indicates only that light work jobs require walking or standing to a significant
degree.  Plaintiff relies instead on SSR 83-10 which states the following about light work:

> Even though the weight lifted in a particular light job may be very little,
> a job is in this category when it requires a good deal of walking or standing —
> the primary difference between sedentary and most light jobs . . . since frequent
> lifting or carrying requires being on one's feet up to two-thirds of a workday, the
> full range of light work requires standing or walking, off and on, for a total of
> approximately 6 hours of an 8 hour workday.  (SSR 83-10, 1983 WL 31251*5-
> *6 (emphasis added).)

1       The ALJ's RFC, however, specifies "less than the full range of light work."  (AR 269.)

2  This assessment would mean less than 6 hours in an eight-hour day.  SSR 83-10 in defining

3  light work notes that "frequent" means occurring from one-third to two-thirds of the time, which

4  would mean from 3 to 6 hours a day.  DOT 920.687.166 also contains the same definition of

5  frequent — "activity or condition exists from 1/3 to 2/3 of the time."  As the ALJ's RFC was for

6  less than the full range of light work, the limitation to 4 hours of standing or walking fits

7  comfortably into the range of frequent activity for light jobs.  Thus, there is no inconsistency

8  between the VE's testimony and the DOT.  The ALJ's step five finding that Plaintiff could

9  perform jobs in the national economy is supported by substantial evidence

10                     * * *

11       The ALJ's non-disability determination is supported by substantial evidence and free of

12  legal error.

13                    **ORDER**

14       IT IS HEREBY ORDERED that Judgment be entered affirming the decision of the

15  Commissioner of Social Security and dismissing this case with prejudice.

16

17  DATED: <u>September 4, 2013 </u>        <u>    */s/ John E. McDermott*    </u>
                                   JOHN E. MCDERMOTT

18                                   UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28